Good morning and welcome to all. This is the beginning of our oral argument docket for January 2013. The first case on the call of the docket is agenda number one, case number 113, 307, People v. Coleman. Counsel for the appellant, please proceed. Good morning, your honors and counsel. May it please the court. My name is Karen Daniel from the Center on Wrongful Convictions at Northwestern University. It's my very great honor to be here this morning representing Christopher Coleman before this court. This case presents a claim of actual innocence, which is arguably the most fundamental claim that can be raised in post-conviction proceedings. And in fact, it's so fundamental that nearly 17 years ago in People v. Washington, this court found that the prospect of holding an innocent person in prison is so abhorrent to our sense of justice, that it implicates the due process clause of the state constitution, regardless of whether, according to the U.S. Supreme Court, it implicates the due process clause of the federal constitution. And in Washington, this court announced a standard by which claims of actual innocence would be judged. It's a difficult standard. It's not been met very many times in the ensuing period since Washington was decided, but it's available for the exceptional case in which truly compelling and conclusive evidence of innocence emerges after trial and in some cases many years after trial, as in this case. Christopher Coleman's case is exactly the type of exceptional case for which People v. Washington was decided. In our case, there's not one new witness, there's not just two new witnesses, there are five new witnesses who have come forward or have been compelled to come forward since trial, were not available to trial, and each one of these witnesses was present at the crime scene, because each one of these witnesses was present at the crime scene. And each one says conclusively that Christopher Coleman was not there. This is exactly the type of conclusive evidence that Washington directs the court to consider and this was reaffirmed most recently in People v. Ortiz, which this court decided in 2009, in which this court again described the type of conclusive evidence contemplated by Washington. And this is exactly the type of conclusive evidence that Washington directs the court to consider and this was reaffirmed most recently in People v. Ortiz, which this court declared in 2009, in which this court declared the type of conclusive evidence contemplated by Washington. the testimony of these witnesses. The Fifth Amendment ensures that people can't be compelled to testify against themselves and incriminate themselves. That's what People v. Molstad decided many years ago. In this case, the witnesses involved were compelled to testify. They were subpoenaed, warrants were arrested. They were directed to testify by the court. They were able to be compelled to testify because the statute of limitations had run. That's why we have the Molstad rule. That's why People v. Washington allows new evidence to be brought forward even after many years had run. It's just a simple practicality that not everyone is willing to come waltzing into court and exculpate somebody else at risk of being sent to prison than themselves. But what I think is important is that this is not a case where the witnesses, at least they didn't feel like they had nothing to lose. They didn't want to come in and as has been pointed out, most of them had criminal records. So most of them are likely to have future convictions. And if they do, the testimony that they gave in this proceeding can be used against them to enhance their sentences. It just seems to me that the lack of finding, lack of credibility, would preclude almost the possibility of any different outcome no matter what standard we use or come up with. If the witnesses are just incredible, how does that undermine confidence in the verdict? Well, the focus of the inquiry in all the cases that this Court has decided on this subject, Washington, Ortiz, Molstad, has been on the nature of the evidence. Is it conclusive or not? In other words, if believed, does it show that the defendant is innocent? In all these same cases, and I think in Molstad and also more recently in Ortiz, this Court has decided that the defendant is innocent. This Court has said it's not the function during the post-conviction proceedings to make that final determination of guilt or innocence or even to resolve all the differences between the state's evidence and the defense evidence. That's ultimately for the jury. The trial court's function is to make a legal finding. And the legal finding, the one at issue here is the third prong of Washington, whether the evidence will probably result in a different outcome at trial. And so what the trial court did below, the trial court didn't make credibility findings the way a judge or a jury would make at a bench trial. This is not a bench trial. If Christopher Coleman won, he wouldn't be acquitted. He gets a new trial. So what the trial court did was enunciate some factors that in the court's mind demonstrated that a jury would not credit the new witnesses over the trial evidence. And that's what we argue was manifestly erroneous. And that's the standard that we have to use to review it. I can't pronounce the name of the case, S-C-H-L-U-P. The standard argues that that standard should apply. Yes, I don't know how to pronounce it either. I decided to say schloop for purposes of this argument. So how does Edwards foreclose that argument? Well, Edwards doesn't speak to that at all. Now, I feel a little awkward telling you what you meant when the court meant when you wrote that argument. But Edwards addressed a very specific and different issue than that addressed here. Edwards, the question in Edwards was what does a petition and the documents attached to the petition have to show with regard to a claim of innocence in order for a petitioner to be able to move forward on a successive petition. You had already decided in Ortiz that you don't need to show cause and prejudice if you have a claim of actual innocence. The question in Edwards was how much of a showing does the petitioner need to make at stage one. And Mr. Edwards argued in that case all he needed to show was the gist of a constitutional claim, which is the normal first stage standard. And this court held no, it's more than that. You need to show, to get in the door, you need to show a colorable claim. And you phrased it a couple of different ways. You also, you did use the language of SHLOOP, but you didn't adopt that as the standard for getting in the door. You prefaced that with a reasonable probability that you could make the same showing as in SHLOOP. That language appeared everywhere in the opinion that the SHLOOP language appeared. That language is not mentioned in the Attorney General's argument expressing that it believes you adopted SHLOOP. Either way, that's how you get in the door. Once you're in the door, then you start over, and the petitioner starts over, and he has to go to a hearing. And unlike at first stage, his affidavits are not presumed true. It's not one-sided. He has to get his witnesses into court. He has to get them to testify. The other side is allowed to present countervailing evidence. So the standard for getting in the door is really not relevant to what you have to show once you're in the door. And I'd be remiss if I didn't point out that in Edwards, Your Honor cited Washington as the substantive standard for establishing a claim of actual innocence. You cited it twice. So obviously, this Court didn't feel like there was any inconsistency between your holding in Edwards and your holding in Washington. So I'm going to leave it at Edwards for getting in the door on a successive claim and Washington as remaining the substantive standard. Also, the standard that the state's attorney is offering is a substitute for the Washington standard. It was considered in Washington. It was briefed, it was considered, and it was rejected. So there's really nothing new here. Washington has worked very well for almost 17 years. People aren't flooding out of the prisons. The standard isn't met very frequently. But again, I will return to the fact that this is that type of exceptional case that does meet the standard. Counsel, how far is it proper for the post-conviction judge to go in making credibility determinations? Well, there are some points on which a post-conviction judge might have to make credibility determinations. For example, in some cases there's a factual issue as to whether the evidence is truly new. That just might invoke a factual inquiry. But as to the ultimate question of guilt or innocence, or indeed the ultimate question of whether the new witnesses are telling the truth, that's not a question. That's not truly the function of the trial court. There is a certain, I don't want to, gatekeeping function, if you will. And certainly the court has to look at all the evidence at trial and present it at the post-conviction petition. But again, it's not a credibility determination, ultimately. It's a legal determination. Is there a likelihood that a jury hearing this evidence would come out with a quip, would come out with a quip? That's a different verdict. And that's a probability. It's not a finding of fact as to whether the new witnesses are telling the truth. Now, of course, if you have a completely implausible testimony or account that's given, there are special considerations given when witnesses are recanting prior testimony. Certain situations like that, you know, the judge might come out differently. But this is a case where especially the four new witnesses that had never testified anywhere before and had never been investigated by the police before, were not co-defendants. Their testimony was not impeached on the question of Christopher Coleman's presence at the crime scene. They had never said anything inconsistent to that. And it was not implausible. In fact, if you took all the witnesses who testified, it put together a very coherent story. And if you will, this was a multiple offender home invasion. Two men were caught at the scene, so they're clearly guilty and they pleaded guilty. And the police, in trying to find the suspects who got away, came up with four potential suspects. And just, you know, picked their names, because some officers who worked at the Warner Homes housing project thought they might be involved. And lo and behold, the identifying witness, the main one, she picked out all four of those pictures. And she said, I picked out everybody who was there. It turned out, we know, and that was determined before trial, two of her identifications were wrong. Mark Roberson had an alibi, he was in Chicago. Albert Nickerson, she took back her identification on the eve of trial. So she's wrong 50% of the time already before trial. And if you look at the evidence that was brought forward at the post-conviction hearing, we now have four new people, Lamont Lee, Rob Coates, Robert McKay, and DeAndre Coleman, and they say we were the four. And all the other four, Chris Coleman, who's testified at trial, but also the other three, all say we weren't the other four. So you have a complete picture that fits together, and that on the essential points of was Christopher Coleman there or not, is not impeached. Does it make any difference that there was conflicting testimony at the trial? It certainly does. And it's making this assessment? Well, yes, you definitely have to look at the testimony that was given at trial, which was very closely balanced, even before the new evidence came in. On the defense side, we had an alibi and Mr. Coleman testifying in his own defense. There were, of all the people in the home, only two made identifications, and only one was actually a face identification of Christopher Coleman. And she was very much, maybe impeached isn't the right word, but her testimony was terribly problematic, because she said she knew Christopher Coleman before the incident, and yet she didn't name him to the police. That's Taquilla Miller, and the same was true of her mother, Bertha Miller, who also made a voice and walk identification. She said she knew Chris Coleman, but she didn't give his name to the police. When these two witnesses got to the grand jury, Taquilla Miller didn't even name Chris Coleman as someone who was there. And her mother, Bertha Miller, told the grand jury, I didn't know at the time it was Chris Coleman. So something else persuaded her between then and trial that she was sure it was Chris Coleman. Apparently it wasn't what she observed at the time of the crime. And those two witnesses, and it's only their witnesses that convicted Chris Coleman, one of them, Taquilla, had Mr. Coleman in the living room in a chair for the entire incident, and her mother, Bertha Miller, had Chris Coleman in her bedroom, which wasn't adjacent to the living room, at the same time during the crime. So you've got terribly conflicting testimony there. What you also have at the trial is you have the lone voice in the wilderness, James Coates, who was one of the offenders caught at the scene, and he testified consistently with what all the witnesses testified to later, which is that Christopher Coleman wasn't there, and then he named all the other people who were with him. He gave that testimony in 1995, and that testimony, that account of who was there and who wasn't remained the same 15 years later. There are not many cases that you're going to find that have this level of conclusive exculpatory evidence that was truly unavailable at the time of trial. The injustice in this case is that Christopher Coleman has to spend another day in prison without being able to put his new evidence before a jury. I ask Your Honor to not disturb the Washington Standard, and I ask Your Honor to grant Christopher Coleman a new trial so that he can put this new evidence before a jury. I have one additional question primarily based upon Justice Freeman and Justice Garmon's questions about credibility. I thought I heard you initially say in response to Justice Freeman's question that it is not the function of the trial judge to determine how the jury would determine credibility of these witnesses. Then you indicated later, I think, that this is a question of law, it's not a credibility question, but then you acknowledged that the judge at the third stage hearing would necessarily get involved in credibility issues. So what is the standard for the judge at the third stage hearing in considering evidence? Can he or she listen to the testimony of the witnesses? Can he look at the trial court record, determine credibility of these new witnesses based upon other things? The statute of limitations has expired, inconsistencies between the witnesses. I mean, are those credibility determinations the judge is entitled to make to determine whether the evidence is conclusive? Not whether it's new, whether it's conclusive or is likely to change the result of trial? The judge should not, the function of the judge is not to decide the ultimate question of whether these witnesses are telling the truth versus the witnesses at trial. However, if the trial judge determines the witnesses are not telling the truth, is there any credible evidence for the judge to consider to grant the petition? Well, the judge really is making a prediction as to what a jury would find considering all this evidence. And so the judge is going to look at the same factors that a jury would look at. And this judge announced some of those factors that in its mind cause it to predict that a jury would not acquit Christopher to evidence. The judge, for example, looked at, he said they had criminal backgrounds. Now, that is typically a factor that a finder of fact looks at in assessing witness credibility. But it's not proper for this judge to say, well, these witnesses have criminal backgrounds, so I'm going to find that no reason, you know, a jury would never credit this testimony. Maybe the finder of fact ultimately might consider that in determining whether or not to believe the witness, but that's not what the post-conviction judge should be doing at this stage. And I might add, in this case, the fact that they have criminal backgrounds really shouldn't be counted against them too much, because after all, they were testifying that they had engaged in criminal behavior. So it is a difference. It's a difference between I believe this witness and considering everything, the trial evidence, inconsistencies, but also consistencies between the testimony, is it likely, is it probable that a jury would reach a different conclusion. And as I read the trial court's findings, the judge listed a number of factors. And I'm not going to go into the details of those factors. I'm just going to say I don't believe that ultimately the judge said these witnesses, I don't believe them. I think the judge made the prediction that I'm discussing, but it's our argument that based on the factors he cited, his prediction was manifestly erroneous. Thank you. Thank you, Your Honor. May it please the court. I'm Assistant Attorney General Eric Levin on behalf of the people of the state of Illinois. I hope to have time today to address the two main issues in this case as we see them, both the legal issue of what the proper standard should be, and then secondly, how the standard should be applied or how the case should come out, regardless of what the trial court's role in making credibility findings is. Let me start you with the question. Does the state concede that defendant's evidence was new, material, and non-cumulative? Yes, Your Honor. We concede that the evidence is. Is that the basis for Washington? Yes, the evidence is new, and we do believe that it is material and non-cumulative. If those three things, according to Washington, exist, then how do you get around it? Well, Your Honor, I'd like to at the beginning be extremely clear about what we are not asking this court to do. The people emphatically support Washington's core holding that our state's due process clause recognizes freestanding actual innocence claims. We are in no way asking the court to disturb that core holding. We believe that Washington rightly recognized that when a convicted defendant is able to make a truly persuasive demonstration of innocence, whether 30 days after trial or 30 years after trial, that our Constitution's due process clause will not countenance his continued incarceration. Which of these factors falls short in the defendant's evidence? Under the Washington standard? Yes. Well, I think here, and this gets to the trial court's role in making credibility findings, the question even under Washington, as Washington said, can't answer that predictive question without himself or herself engaging in analysis of the credibility of that evidence. If the trial court couldn't make or couldn't engage in credibility findings, there would be no need for a hearing. We could do, the Washington standard could be satisfied in that case just on a proffer of evidence. Here is what evidence I would present. And what Petitioner doesn't, I don't think, mention in her argument is the standard of review. And even Ortiz made this clear, that the standard of review following an evidentiary hearing on a post-conviction petition is whether or not the trial court's denial of the petition was manifestly erroneous. Another way of saying that is was it indisputably erroneous or plainly erroneous. And that necessarily calls for deference to the factual findings made by the trial court. How does this case differ from Ortiz? Well, I think here, in Ortiz, the trial court, if I recall, didn't actually make credibility findings with respect to the probability of the evidence changing the trial. I think the trial court there mistakenly held that certain evidence might not have been material or was cumulative. Here we have a trial court who heard live testimony. The trial court judge saw the witnesses on the stand, judged their demeanor in a way that none of us were able to do, took into account the fact that for the most part they had extensive felony backgrounds, that they all waited until after the statute of limitations had expired. Particularly with respect to DeAndre Coleman, I think that's troubling. This was his half-brother. And by his own testimony, he knew or he believed that Petitioner had been wrongfully convicted as early as 1999 and yet never said anything to anybody, waited to be contacted by Petitioner's lawyers. And, Justice Thomas, I believe you asked how would the credibility findings, what effect do they have on the ultimate determination of what probability the evidence would have on a new jury? And by no means is our argument that the fact that they waited until after the statute of limitations, by no means is our argument that that's dispositive. But it's certainly a factor, along with the other factors, the felony convictions, the fact that they were friends with Petitioner, the fact that Coates' testimony was inconsistent with what he initially told Detective Rabe. These are all factors that the trial court properly considered, and together they led him to conclude that the evidence was not credible and that a reasonable jury would not credit it. And if a reasonable jury wouldn't credit it, we can't say that it would probably change the result of the trial. Now, by no means, again, is our argument that the trial court's credibility findings were required. But that's not the standard. The standard is whether there's evidence in the record to support them under the manifestly erroneous standard of review. And we think certainly under that standard, properly interpreted, there is evidence to support those findings. And it's not for a reviewing court who wasn't in the courtroom, didn't see the witnesses testifying, to essentially overturn those factual findings. Again, with respect to the fact that, I think, I believe, Justice Garmon, you asked, what would be the effect of conflicting evidence at trial? And this, too, is something for the trial court to take into consideration in determining whether the new evidence, whether it's credible or not credible, what effect would that have on a jury that heard the original evidence? And so, obviously, the weaker the State's case was at trial, perhaps the less compelling the showing would have to be in a post-conviction petition. But again, the court has to consider all of these things, or it can't make that holistic determination of whether the evidence would probably change the result. Now, both the petitioner and his amicus repeatedly sort of defer to the fact that, well, a new trial can be held, and a new jury can consider this. And I think this is essentially, in our view, the fundamental flaw with the Washington standard. When Washington essentially took the standard from People v. Molstad, which was a case where a petitioner had come forward with his new evidence within 30 days, in a timely filed motion for new trial. And in that procedural posture, it makes sense to say that the defendants come forward with new evidence that would probably change the result, so we can essentially do it all over again. The State will have no problem recreating its case, the defendant will have no problem recreating his case with the addition of the new evidence, and a jury can then come to a new conclusion. When we're talking about what's required by the Due Process Clause, without a statute of limitations, I mean, in this case, the post-conviction petition was filed 15 years after trial. The rule would apply equally to 20 or 30 years after trial. The State, the practical impediments to the State recreating its case at that point are substantial. Witnesses could have died, they could be unable to be located. Even if they can be located, certainly their memories will have faded. Physical evidence could have been lost or degraded. And so that's why it's important, and Justice Blackmun recognized this in his dissent in Herrera, where he would have recognized a freestanding actual innocence claim. But he also recognized that the evidentiary hearing on that actual innocence claim, for all practical purposes, will be the last word on whether or not the defendant can be punished. And so that's why the judge at that hearing has to make the determination of whether or not our confidence in the validity of this conviction is so shaken that it can't be upheld. The basis for overruling the Washington Standard. I mean, other states apply the same standard, right? Only three reversals in 17 years since the standard's been in effect, right, under Washington. Three in published decisions. I agree with that. We don't know, perhaps, if there have been trial court decisions granting relief that the State hasn't appealed. I don't know. Are you basically conceding that if we don't overrule the Washington Standard that your argument fails? I know you have a page where you say that there was compliance even under the Washington Standard as it sits. Not at all. I think we still do win under Washington, because I say this court should defer to the trial court's credibility determinations. With respect, Your Honor, to other states that seemingly adopt Washington-like standards, what's important to note is that in every case cited in the petitioner's reply brief, those are states where the standard was crafted by the legislature, essentially in like a post-conviction statute. So unlike Illinois, which has, and Washington recognized this, unlike Illinois, which has not crafted an exception to the statute of limitations for newly discovered evidence claims, these other states have. And so it's one thing for the legislature, under its statutory authority, to craft, to weigh the competing interest and crafts what it thinks is the appropriate rule, which it can be changed at any time. It's another thing for this court, and this is what it did under Washington, which was it was crafting a constitutional rule. It was saying what the due process clause requires. And the states, the cases we cite in our brief that we analogize to were likewise, I believe at least three out of the four of them were grappling with the constitutional question. And I think the fourth state might not have been explicitly under the state constitution, but was under a habeas provision that essentially directed courts to decide the cases law and justice require. And so it's fundamentally different than a statutorily enacted statute. So really, I think this gets me back to the point I was initially making, is that with respect to the legal question, what we're asking this court to do is very limited. We wholly support the core holding of Washington. Our only argument is that the court should adopt a standard for relief on Washington claims that, in fact, requires petitioners to make a truly persuasive showing of actual innocence. Going back to something you said earlier, you were contrasting if this had been something that came up within 30 days, and then you talked about this being 15 years. Are you suggesting that there should be more deference given to the trial judge's findings on credibility the longer it's been since the defendant was convicted? No, Your Honor, let me clarify. I'm not suggesting that how long after the trial alters the amount of credibility owed to the trial court. What I'm suggesting is the fact that the case is older, 15 years, requires a higher standard for relief. But the standard is actual innocence. Why should that be? Well, the standard is actual innocence, but the question is, I mean, we can never really know if somebody's innocent or not innocent. The question is, and that's true even at trials where the jury's asked to decide guilt beyond a reasonable doubt. The question here is how confident must a court be in believing that a petitioner is actually innocent before overturning the results of a constitutionally flawless trial, and in a manner where the petitioner very likely won't be able to be retried again. And this is what the courts that have recognized such constitutional claims have recognized. We don't want to put the standard so high that we won't be able to vindicate the truly persuasive cases of actual innocence. But on the other hand, we don't want to put the standard so low that validly come to convictions 15 years after the fact are lightly overturned, and so it's a balancing act. But I think the court's properly determined that a clear and convincing evidence standard is the right standard. And of course, if somebody comes forward with a truly persuasive case of actual innocence, it will meet that standard. I think part of the problem here... Excuse me, I think following up Justice Garmon's question, though, it leads me to believe that you really don't want to say it, but it's actually because the prosecution can't bring their witnesses, they may not be around anymore, or the case is weaker than it was 15 years before. Well, I do believe that that is true, and these are factors the courts look at, where the foundation of a Washington claim is that one of the fundamental bedrocks of our system is that it's a system of procedures, and where a defendant has been found guilty beyond a reasonable doubt by a jury of his peers at a trial where he's been afforded the full panoply of our constitutional protections and an appeal, the right to counsel, the right to cross-examine witnesses, et cetera, in the eyes of the law, he's guilty. Now, Washington rightly recognized that where a defendant can come forward after the fact with a truly persuasive case of innocence, then that legal construct has been undermined, and there should be relief. But that only makes sense if it is indeed a truly persuasive case of actual innocence. And I think this, to some extent, I think the argument now might be semantic. But are you putting timeline as a higher standard, because it's so long, versus just three years or two years after, or 15 years is a long time? Well, see, I think in drawing a timeline, I think these are questions that perhaps are better suited to the legislature that can actually draw lines and say, you know, we'll extend the statute of limitations by this amount or that amount. When the court is crafting a rule under the Constitution, essentially it's a blunt instrument. There's one rule for all cases. And so the rule is going to apply equally to a case brought four years after conviction or a case brought 20 or 30 years after conviction. And if it's enough to say 30 years after conviction that new evidence that would probably change the result of trial is enough to overturn that validly enacted conviction, in a sense, and in a manner where retrial won't be possible, it's very likely that defendants that aren't innocent will also be swept up into the Washington rule. We think the clear and convincing evidence standard is a standard that balances both a petitioner's and society's interest in vindicating truly persuasive cases of actual innocence with, on the other hand, ensuring that society's interest in the finality of its convictions. And in its ability with that finality to effectively punish and rehabilitate its criminal offenders, we think that clear and convincing evidence standard balances those interests and comes to the proper result. I'd just also briefly like to address the effect that Edwards has on this case. It's true that Edwards, I think it's, actually if I step back a second, Edwards was a case in a slightly different procedural posture. And petitioners write that it was a different issue, but it's a related issue. The question in Edwards was whether somebody should be given leave to file a successive post-conviction petition. And this Court's made clear that there's two ways to get around the bar against successive petitions. The cause and prejudice standard and what's known as the fundamental miscarriage of justice exception. And the Court noted in Edwards that that fundamental miscarriage of justice exception is not unique to Illinois. It's also applied by the federal courts. And that standard asks whether or not the petitioners come forward with new evidence in light of which it's more likely than not that no reasonable jury would find him guilty. Now, Edwards was not a case about whether or not that petitioner was entitled to relief on his successive post-conviction petition, in which case he would have had to have met that actual SHLUIP standard. Edwards was a case about whether or not he was entitled to leave to file. And so I think that's the import of this Court's language that raises the probability, essentially asking, have his papers made out a prima facie case of SHLUIP, enough to encourage further litigation. But obviously once he's, because we wouldn't make a petitioner prove his actual case just in his pleadings. But if he's made out that prima facie case, if he's raised the probability that his evidence will satisfy SHLUIP, he gets through the door and then, of course, after an evidentiary hearing, he would have to satisfy the full SHLUIP standard. And so this is where we think it doesn't really make sense for this Court to recognize the SHLUIP standard, the more likely than not that no reasonable jury would find him guilty standard for satisfying the gateway actual innocence claims, but yet apply either that same or a lower standard for a freestanding actual innocence claims. And that takes us back essentially to what is the underlying rationale for recognizing freestanding innocence claims versus the underlying rationale for recognizing gateway actual innocence claims. And I think SHLUIP makes the point persuasively that the reason we allow petitioners to clear the hurdle to filing a successive petition, if they can make the SHLUIP showing, is that if they make a showing of innocence that strong, we can't be convinced in the rightness of their conviction unless we also satisfy ourself that there wasn't a Brady violation at trial or that there wasn't a Strickland violation at trial, etc. The basis for recognizing freestanding actual innocence claims is fundamentally different. There the claim proceeds on the assumption that there was no Strickland violation at trial, there was no Brady violation at trial, there was no violation of the Confrontation Clause, etc. The trial was otherwise constitutionally flawless. But at some point, if a defendant can make a showing of innocence so strong, a truly persuasive case of innocence, our society is just not prepared to recognize the rightness of that conviction, even if there were no constitutional problems at that trial. And so we ask only that the court apply a standard that actually comports with the rationale for recognizing freestanding actual innocence claims. Of course, just briefly on the facts, as I said, I do believe it's obviously a closer case under Washington than it would be under an enhanced Schlup standard. But under either test, the question is whether or not, in light of the trial court's credibility determinations, the defendant has made whatever showing is required with respect to the effect that this new evidence would have on a jury. And in light of those credibility findings, which, although not required by the evidence, are supported by the evidence, in light of those findings, the extensive criminal backgrounds, the fact that they waited many years before coming forward with this evidence until any jeopardy that they faced from implicating themselves had passed, the fact that they were friends with Petitioner, the fact that the two offenders caught at the scene did not initially give the same story that they gave later, all of these factors together are things that the trial court rightly considered in finding the evidence to be incredible. And so if there are no further questions, we would ask the court to affirm the judgments below. Thank you. Thank you, Mr. Lemon. Ms. Daniel? Thank you. Ms. Daniel, I'm over here. Oh, I'm sorry. Before you get going on rebuttal, tell the court why we shouldn't be concerned that without the higher standard as proposed by Mr. Levin that we would be creating a prototype, a model for post-conviction claims after a long period of time in which, you know, similar factors to here, statute had run as to some of the witnesses, prosecution already handled as to some of the new witnesses, and all they would have to do was file that type of claim and get a new trial, basically. With other witnesses probably gone after 15 years, why wouldn't we be opening the door to all kinds of claims, especially since the other half of your argument is that the trial judge can't make an ultimate credibility determination with respect to those witnesses? One of the most important aspects of the Washington test is the first prong, which is that the failure to bring forward the evidence at the time of trial was not due to lack of diligence on the part of the defendant. That's one of the ways that the claims get knocked out. And that's a difficult showing in and of itself. No one is going to, no prisoner is going to willingly let many, many, many years pass by sitting in prison in the hopes of waiting long enough so that the witnesses die off and that when he finally gets his new trial 20 years later, which is the course Mr. Coleman is on, he'll be able to get out, because he's already done 20 years. It's very important that you have to show lack of diligence at the get-go, and I think that pretty much takes care of Your Honor's concern that and the motivation of a person who is innocent to bring that evidence forward as soon as it's available. And it isn't always 15 years later. Sometimes it's a few years later. I think in Ortiz it might have been around eight years later. In Washington itself I think it might have been six years. People bring forward the evidence when they can. If it were a big concern, Your Honor, you'd see a lot more cases where people have gotten new trials under this standard. And it just isn't so. Mr. Levin said just at the end, he said something that struck me, which was just briefly on the facts. In this case the facts are everything, and I can't do them justice in this period of time. I know Your Honors will carefully look at the facts, but I want to point out two things. One, a comparison between this case and Ortiz, which Justice Thomas inquired about. And Ortiz was a compelling case, but there was only one new witness there. And we have five, actually we have eight new witnesses, but five who were at the scene and said that the defendant, Mr. Coleman, wasn't there. I also point out that in Ortiz the trial judge in that case denied relief, finding that the evidence was cumulative. And in our case, the judge held the same thing, incorrectly. The Attorney General has conceded the new evidence was not cumulative. And I realize that the judge went on and said, assuming arguendo, it wasn't cumulative, it wouldn't have changed the result. But still, I think it's fair to say that was probably tainted by his incorrect view that this was cumulative evidence. And finally, just on the facts, the judge listed a number of factors, and Your Honors can look at it and see why, first of all, some of the factors the judge relied on were factually incorrect. For example, the judge said that Tequila Miller had reconsidered her identification of Mark Roberson as one of the offenders. She did not. At trial she still said that he was one of the people that participated in the home invasion. Even the police knew that wasn't true. The trial judge did not note ever, in his opinion, the problems with the eyewitness identifications that I've pointed out. He did not note anywhere the inconsistencies in the prosecution witnesses' accounts of how the crime happened. He did not note anywhere the many, many, many consistencies between the post-conviction witnesses' testimony regarding Mark Roberson, certainly that Christopher Coleman wasn't there, but also their descriptions of how the crime went down. And it really seems to me that both the trial judge and the attorney general are not disputing that these five new witnesses were there and participated. That doesn't seem to be an issue in dispute. And if in fact they were, then that undercuts the entire basis of the trial and the entire testimony of Tequila Miller, the two guys arrested at the scene, and four different guys. If our new witnesses, and there's really four truly new witnesses, if they were all there and they participated, then the entire theory of trial was incorrect. And that's a very plausible theory. It's really not impeached. And it was manifestly erroneous for the trial judge to not grant relief in view of that very important aspect of the evidence. Thank you very much for your time. Thank you, Ms. Daniel, Mr. Levin, for your arguments today. Case number 113307, People v. Coleman, is taken under advisement as agenda number one. You're excused.